[Cite as *State v. Bowshier*, 2012-Ohio-2410.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
### CLARK   COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 2011-CA-28 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 05-CR-1113 |
| v. | : | |
| | : | |
| JEFFREY BOWSHIER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 1st day of June, 2012.

. . . . . . . . . . .

LISA M. FANNIN, Atty. Reg. #0082337, Clark County Prosecutor's Office, 50 East Columbia Street, 4th Floor, Post Office Box 1608, Springfield, Ohio 45501
  Attorney for Plaintiff-Appellee

BRANDIN D. MARLOW, Atty. Reg. #0076381, 150 North Limestone Street, Suite 21-B, Springfield, Ohio 45501
  Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, J.

{¶ 1}   Defendant-appellant Jeffrey Bowshier appeals from a judgment of criminal forfeiture, following a jury trial, of $21,196 in U.S. currency and a 2001 Chevrolet

pickup truck. He contends that the judgment is not supported by the evidence, and that the judgment is against the manifest weight of the evidence. He also contends that the trial court erred by failing to make an independent determination whether the forfeitures constituted excessive fines prohibited by the United States and Ohio constitutions; that the prosecutor, in closing argument, misstated the burden of proof; and that he received the ineffective assistance of counsel.

{¶ 2} The forfeiture specifications in the indictment alleged that the property to be forfeited "constitutes or is derived directly or indirectly from, any proceeds that the person obtained directly or indirectly from the commission of *the* felony drug abuse offense or act and is therefore subject to forfeiture * * * ." (Emphasis added.) We agree with Bowshier that as alleged in the indictment, the State was required to prove that the property either constituted proceeds from the drug transaction of which Bowshier was convicted, or was directly or indirectly derived from those proceeds. The evidence at the forfeiture trial established that the property was part of the consideration that Bowshier either paid, or proposed to pay, for the drugs he was purchasing. Therefore, we agree with Bowshier that the evidence is insufficient to prove that the property constituted proceeds that *Bowshier* obtained directly or indirectly from the commission of the drug offense or act with which he was charged, and of which he was convicted.

{¶ 3} The judgment of forfeiture is Reversed and Vacated. In view of our disposition of Bowshier's contention that the judgment of forfeiture is not supported by the evidence, we find it unnecessary to address his other contentions.

## I. The Drug Deal

{¶ 4}   In 2005, an undercover Dayton Police officer, George Delrio, assigned to the Dayton Drug Enforcement Agency, set up a sale of 200 pounds of marijuana to Bowshier.   The terms of the proposed sale were revised.   The amount of the marijuana to be sold was reduced to 175 pounds, because that was the most that the Drug Enforcement Agency had on hand from marijuana seized in a previous case.   In the transaction, Bowshier gave Delrio $20,975 in U.S. currency, title to a car and a motorcycle, and two kilos of powdered cocaine, in exchange for the marijuana.

{¶ 5}   The marijuana was in the back of a U-Haul truck.   Bowshier was supposed to take the truck and bring it back an hour later.   But the battery of the U-Haul truck had been disconnected, and several members of a SWAT team closed in on Bowshier as soon as he attempted to start the truck.

{¶ 6}   In addition to the $20,975 that Bowshier gave Delrio, Bowshier had $221 remaining on his person when he was arrested, which was seized, making up the $21,196 ultimately forfeited.   The police also seized a Chevy van that Bowshier had driven to the location of the transaction.

## II. The Indictment

{¶ 7}   Bowshier was charged by indictment with selling or offering to sell more than 1,000 grams of powder cocaine (Count I); obtaining, possessing, or using powder cocaine in an amount exceeding 1,000 grams (Count II); obtaining, possessing, or using marijuana in an amount exceeding 25 grams (Count III); selling or offering to sell powder

cocaine in an amount exceeding 25 grams, but less than 100 grams (Count IV); obtaining, possessing, or using marijuana in an amount exceeding 1,000 grams, but less than 5,000 grams (Count V); and obtaining, possessing, or using powder cocaine in an amount exceeding 25 grams, but less than 100 grams (Count VI). All six counts included forfeiture specifications.

{¶ 8} Counts I, II, and III included forfeiture specifications pertaining to the $21,196 in currency; a 2001 Chevrolet pickup truck, title to which was given as part of Bowshier's consideration for the purchase of the cocaine; the 1995 Chevrolet van that Bowshier had driven to the transaction; a 2001 Suzuki motorcycle, title to which was given as part of Bowshier's consideration for the purchase of the cocaine; a 2000 Pontiac Bonneville; and a residence at North Burnett Road. Counts IV and V included forfeiture specifications pertaining to the $21,196 in currency and the residence. Count VI included a forfeiture specification pertaining to the residence.

{¶ 9} Each forfeiture specification in the indictment, after identifying the property to be forfeited, included the allegation that the property "constitutes or is derived directly or indirectly from, any proceeds that the person obtained directly or indirectly from the commission of the felony drug abuse or act and is therefore subject to forfeiture pursuant to Section 2925.42 of the Ohio Revised Code."

### III. The First Trial

{¶ 10} The jury found Bowshier guilty of Counts I, II, V, and VI, and a judgment of conviction was entered. Thereafter, the forfeiture specifications pertaining to the 2000 Pontiac Bonneville and to the residence were dismissed with prejudice. The 2001 Chevrolet

pickup truck and the 1995 Chevrolet van were ordered forfeited, as specified in Counts I and II.

### IV. The First Appeal

{¶ 11} Bowshier's conviction was reversed, and the cause was remanded to the trial court for further proceedings. *State v. Bowshier*, 2007-Ohio-5364, 2d Dist. Clark No. 06-CA-41.

### V. The Second Trial

{¶ 12} Initially, Bowshier pled guilty to Count I, with a major drug offender specification. But the trial court subsequently granted Bowshier's motion to withdraw his plea. In September, 2008, he was convicted by a jury of Counts I, II, and V. A judgment of conviction was entered, including an order of forfeiture of the four vehicles.

### VI. The Second Appeal

{¶ 13} Bowshier appealed. He argued, and the State agreed, that the trial court had erred by not submitting the forfeiture issues to the jury. We reversed the forfeiture orders, only, and remanded this cause for further proceedings. *State v. Bowshier*, 2d Dist. Clark No. 2008 CA 101, 2009-Ohio-6387, ¶ 48-49, 120.

### VII. The Forfeiture Trial

{¶ 14} On remand following the second appeal, the forfeiture issues were tried to a jury. The State presented two witnesses. A tax commissioner agent with the Ohio

Department of Taxation, Donn Nightingale, testified that Ohio Income Tax Returns for Bowshier could not be found for the years 2004 and 2005. On cross-examination, when Nightingale was asked: "So simply as you sit here today to testify, you can't testify as to whether or not Mr. Bowshier had any legitimate income. All you can say is your record search demonstrates he didn't file taxes, correct?" Nightingale responded: "That's correct."

{¶ 15} The State's other witness was Springfield Police Sergeant Scott Woodruff. Woodruff testified concerning the drug transaction of which Bowshier was convicted, including the seizures of the vehicles and the money. Woodruff also testified:

Q. * * * As part of your initial investigation, were you able to – Did you ever determine if Jeffrey Bowshier was employed during the pendency of your investigation?

A. We were not able to determine any type of employment throughout the investigation, that's correct.

{¶ 16} On cross-examination, Woodruff testified:

Q. The $221, and the larger amount of money and the vehicle titles, it would be a correct statement that you have no idea where Mr. Bowshier obtained those items or that money, correct?

A. That's correct.

Q. You have no idea who those items belong to, whether they belong to him, whether they were transferred to him, if in fact they were. You have no idea about that; you just know he had them on that day, correct?

A. They were in his possession, that's correct.

Q. But you have no idea where they came from, correct?

A. Originally, no.

Q. That $20,000 (sic), I'm not asking you what your suspicion is; I'm not asking what your belief is; you have no evidence to determine where that money actually came from, correct?

A. That's correct.

* * *

Q. You don't know whether he worked or not, correct? You assume he didn't, but you don't know, correct?

A. As I stated previously, all the information we had is that he was not employed.

Q. The question I asked was, you don't know whether he worked or not, correct?

A. That's correct.

{¶ 17} After the State rested, Bowshier moved for a judgment of acquittal, under Crim. R. 29, on the forfeiture specifications. The trial court read the indictment, and posed the question, "is that supposed to be proceeds received from the trafficking offense that occurred on that date?" Bowshier responded: "Judge, it has to be. In order for it to match with this indictment, it has to be or else it's a defective specification and must be dismissed."

{¶ 18} The State argued that it only had to prove that the items sought to be forfeited were proceeds, or were purchased with proceeds, from any drug transactions, not from the specific drug transaction charged in the indictment.

{¶ 19} Again, the trial court posed the question: "Doesn't the language of this indictment require that the van had been derived from the specific proceeds that the defendant would have

obtained from this particular transaction?"   Bowshier responded:   "Yes."

{¶ 20}   During the course of this argument, the State did concede that it could not seek forfeiture based upon the fact that the items sought to be forfeited were used in the commission of the drug offenses charged in the indictment, because: "Unfortunately, at the time that the indictment was done back in 2005, whoever prepared the indictment did not use that language."

{¶ 21}   Ultimately, the trial court overruled Bowshier's Crim. R. 29 motion in part, and sustained it in part.   The trial court sustained the motion with respect to the Chevrolet van that Bowshier had driven to the transaction, but overruled it with respect to the Chevrolet pickup truck and the currency, on the ground that: "Those are items being used to facilitate this transaction."

{¶ 22}   Bowshier rested without putting on any evidence.   The trial court instructed the jury on the elements of forfeiture, with respect to both the currency and the Chevrolet pickup truck, in the words of the indictment.

{¶ 23}   The jury found that both the currency and the pickup truck were subject to forfeiture, and the trial court rendered judgment accordingly.   From the judgment of forfeiture, Bowshier appeals.

### VIII.   There Is Insufficient Evidence to Support the Judgment
### of Forfeiture of the Currency and the Pickup Truck

{¶ 24}   Bowshier's First Assignment of Error is as follows:

{¶ 25}   "THE JURY VERDICT OF FORFEITURE IS NOT SUPPORTED BY

LEGALLY SUFFICIENT EVIDENCE AND IS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 26}   In support of his Crim. R. 29 motion for a judgment of acquittal on the forfeiture specifications, Bowshier argued that the specifications alleged that the items sought to be seized were either the proceeds of the offense charged in the indictment, or were directly or indirectly derived from those proceeds, and there was no evidence to support those allegations.   To the contrary, the evidence was that the items sought to be seized were part of the consideration Bowshier was providing in exchange for the marijuana he was purchasing.

{¶ 27}   In response, the State argued that there was evidence that the $21,196 in U.S. currency and the 2001 Chevrolet pickup truck were either the proceeds of, or were derived from the proceeds of, other, earlier drug transactions in which Bowshier had been involved. The evidence in the record to support this proposition is sparse, to say the least.   But we agree with Bowshier that the forfeiture specifications in the indictment allege that the property to be forfeited was either the proceeds of, or was derived from the proceeds of, the particular drug offense charged in the indictment.

{¶ 28}   Each of the forfeiture specifications, after reciting the property to be forfeited, states that the property "constitutes or is derived directly or indirectly from, any proceeds that the person obtained directly or indirectly from the commission of the felony drug abuse offense or act and is therefore subject to forfeiture pursuant to Section 2925.42 of the Ohio Revised Code."   The reference is to "the" felony drug abuse offense or act, not "a" felony drug abuse offense or act.   The use of the definite article suggests that the reference is to the particular drug abuse offense or act set forth in the indictment that includes the specification,

not to any other drug abuse offense or act that Bowshier may have committed in the past.

{¶ 29} This construction finds support in R.C. 2925.42, the statutory authority for the forfeiture cited in the specifications. At the time of the indictment in 2005, before the statute was amended in 2006 by Sub. H.B. No. 241, R.C. 2925.42 provided, in pertinent part, as follows:

(A)(1) In accordance with division (B) of this section, a person who is convicted of or pleads guilty to a felony drug abuse offense, * * * , loses any right to the possession of property and forfeits to the state any right, title, and interest the person may have in that property if either of the following applies:

(a) The property constitutes, or is derived directly or indirectly from, any proceeds that the person obtained directly or indirectly from the commission of the felony drug abuse offense or act.

(b) The property was used or intended to be used in any manner to commit, or to facilitate the commission of, the felony drug abuse offense or act.

(2) All right, title, and interest of a person in property described in division (A)(1) of this section vests in the state upon the person's commission of the felony drug abuse offense of which the person is convicted or to which the person pleads guilty and that is the basis of the forfeiture, * * * .

(3) The provisions of section 2925.43 of the Revised Code that relate to the forfeiture of any right, title, or interest in property associated with a felony drug abuse offense pursuant to a civil action to obtain a civil forfeiture do not apply to the forfeiture of any right, title, or interest in property described in division (A)(1) of this

section that occurs pursuant to division (B) of this section upon a person's conviction of or guilty plea to a felony drug abuse offense * * * .

(4) * * * .

(B)(1) A criminal forfeiture of any right, title, or interest in property described in division (A)(1) of this section is precluded unless one of the following applies:

(a) The indictment, count in the indictment, or information charging the felony drug abuse offense specifies the nature of the right, title, or interest of the alleged offender in the property described in division (A)(1) of this section that is potentially subject to forfeiture under this section, or a description of the property of the alleged offender that is potentially subject to forfeiture under this section, to the extent the right, title, or interest in the property or the property is known at the time of the filing of the indictment or information; * * * .

* * *

(C) There shall be a rebuttable presumption that any right, title, or interest of a person in property described in division (A)(1) of this section is subject to forfeiture under division (B) of this section, if the state proves both of the following by a preponderance of the evidence:

(1) The right, title, or interest in the property was acquired by the offender during the period of the commission of the felony drug abuse offense or act that, if committed by an adult, would be a felony drug abuse offense, or within a reasonable time after that period.

(2) There is no likely source for the right, title, or interest in the property other than proceeds obtained from the commission of the felony drug abuse offense or act.

{¶ 30} The wording of the statute leaves no doubt that the property sought to be

forfeited must either have been the direct or indirect proceeds of the particular drug abuse offense of which a defendant has been convicted – not of some other drug abuse offense that the defendant may have committed in the past – or have been used in the commission of that offense. Based upon the evidence in the record, the indictment in this case certainly could have alleged that Bowshier used the $21,196 in currency (or at least the $20,975 thereof that furnished part of the purchase price for the marijuana) and the 2001 Chevy pickup truck in the commission of the offense. But the State conceded in the trial court that the forfeiture specifications in the indictment in this case do not so allege.

**{¶ 31}** The evidence in the record does not support a finding that the $21,196 in currency and the 2001 Chevy pickup truck constituted proceeds that Bowshier obtained from the commission of the drug abuse offenses of which he was convicted. It therefore becomes unnecessary to consider Bowshier's alternative argument that these findings are against the manifest weight of the evidence.

**{¶ 32}** Parenthetically, the statute provides for the forfeiture of the person's "right, title, or interest in the property." Query whether Bowshier had any interest in the $20,975 that he paid to Delrio as part of the purchase price for the marijuana, once he gave it to Delrio. Neither party has addressed this issue, and we make no attempt to resolve it. We merely determine that the trial court erred in declaring forfeit any interest Bowshier may have had in this property.

**{¶ 33}** Bowshier's First Assignment of Error is sustained.

### IX. Bowshier's Other Assignments of Error Are Moot

**{¶ 34}** Bowshier's Second, Third, and Fourth Assignments of Error are as follows:

{¶ 35} "THE TRIAL COURT ERRED WHEN IT FAILED TO MAKE AN INDEPENDENT DETERMINATION WHETHER THE FORFEITURE OF THE PROPERTY IS AN EXCESSIVE FINE PROHIBITED BY THE OHIO AND UNITED STATES CONSTITUTIONS."

{¶ 36} "THE PROSECUTOR ENGAGED IN MISCONDUCT BY STATING AN IMPROPER BURDEN OF PROOF THAT PREJUDICIALLY AFFECTED A SUBSTANTIAL RIGHT OF BOWSHIER."

{¶ 37} "DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL THROUGH THE FORFEITURE PROCEEDING."

{¶ 38} As a result of our disposition of Bowshier's First Assignment of Error, we are reversing and vacating the trial court's judgment of forfeiture. Therefore, Bowshier's remaining assignments of error are overruled as moot.

## X. Conclusion

{¶ 39} Bowshier's First Assignment of Error having been sustained, and his other assignments of error having been overruled as moot, the judgment of the trial court forfeiting the $21,196 in U.S. currency and the 2001 Chevrolet pickup truck is Reversed and Vacated.

. . . . . . . . . . . . .

FROELICH, concurs.

HALL, J., concurring:

{¶ 40} I agree that the State of Ohio failed to prove the $20,975 the defendant gave to undercover officers to purchase drugs was "proceeds * * * from the commission of the felony

drug abuse or act" under former R.C. 2925.42. I write to point out that this result is the consequence of the prosecution's omission of the correct statutory language in the indictment, and its failure to seek an amendment thereto. Furthermore, I don't believe our decision has any effect with regard to the money because I don't believe the defendant had any possessory interest in the money to forfeit.

**{¶ 41}** The drug transaction facts are related in *State v. Bowshier*, 2d Dist. Clark No. 2008 CA 101, 2009-Ohio-6387. On November 17, 2005, the defendant gave detective Delrio a bag containing two kilos of powder cocaine, the $20,975, and other items to purchase from Delrio a large quantity of marijuana that had been seized from other investigations. The marijuana was contained in a U-Haul truck. After delivery of the bag to Delrio, the two walked to the truck. Bowshier inspected the marijuana, got in the truck to drive away, and was arrested because police had disabled the vehicle.

**{¶ 42}** Under former R.C. 2925.42, a defendant convicted of a drug abuse offense loses right of possession to (a) "proceeds" of the offense or (b) property used to facilitate the offense. Undoubtedly, the drug-buy money was property used to facilitate the offense for which the defendant was found guilty. But, the prosecution failed to include the section (b) language in the indictment's forfeiture specification. As pointed out in the majority opinion, the prosecutor admitted: "Unfortunately, at the time that the indictment was done back in 2005, whoever prepared the indictment did not use that language." Why the prosecutor did not request to amend the technical language of the indictment is unknown.[1] Nevertheless, the case

---

[1] I recognize that an argument could be made opposing amendment of the indictment language. However, the Twelfth District Court of Appeals approved amendment of a forfeiture specification in *State v. King*, 12th Dist. Fayette No. CA2008-10-035, 2009-Ohio-2812, ¶15-16.

proceeded only upon the allegation that the money was "proceeds" of the offenses. The money apparently was acquired before the drug transaction on November 17, 2005, likely from other drug transactions, but not as "proceeds" of this one. Accordingly, I agree with the result reached by the majority.

{¶ 43}  I further agree with the parenthetical question in ¶ 32 of the majority opinion. Does the defendant have any possessory interest in the money at all?  I think not. He gave away the money to detective Delrio. The fact that he exchanged the money for contraband that he could not legally possess is of no consequence. It is no different than if the defendant gave the money in a drug transaction to a third party, and the police retrieved the money from the third party. The third party might claim a possessory interest, but the defendant relinquished his interest as a result of the transaction.

. . . . . . . . . . . . .

Copies mailed to:

Lisa M. Fannin
Brandin D. Marlow
Hon. Douglas M. Rastatter